Hinckley and others vs. Beckwith and another.

*Contract construed— Dependent and independent covenants. — Bill of excep-*
*tions: Presumption in favor of judgment. — Judicial notice of geographi-*
*cal divisions. — Stipulation construed.*

1. By the terms of a lease for a saw-mill, repairs costing over five dollars
   were to be made by the lessors, and others by the lessees; and there was
   a further agreement that "all repairs are to be made, by either or both
   parties, as soon as there is an appearance of any thing failing, to avoid a
   break down, or a heavy repair, or delay—the head sawyers to be judges
   of the mill gearing, and the engineers to be judges of the engine and
   boiler." *Held,* that the engineers were to judge whether repairs were
   needed to *prevent* a break down, etc., but, in case of an actual break
   down, the right of the lessees to have repairs made, costing over five
   dollars, did not depend on the advice of the engineers.
2. In such a lease, the agreement of lessors to repair, and an agreement by
   lessees that the mill was not to be run at more than a specified rate of
   speed, *held* to be independent.
3. Where, moreover, lessors were to furnish the engineers, who were to be
   judges of the rate of speed, they could not set up the maintenance of an
   excessive speed to defeat a recovery for their neglect to repair, without
   showing that the lessees were in some way responsible for such excess.
4. Where a bill of exceptions containing depositions does not contain the
   notices and certificates required to be annexed to them, it will be pre-
   sumed, in favor of the judgment, that they were in fact annexed, unless
   the contrary is stated.
5. The court, taking notice of the geographical divisions of the state, may
   know judicially that a witness, whose place of residence is given in his
   deposition, resided more than thirty miles from the place of the trial,
   though that fact is not expressly stated.
6. A stipulation that certain testimony taken on a former trial "may be read
   in evidence on the trial of this cause," *held* to apply to *any* subsequent
   trial, and not merely to the *first*.

APPEAL from the Circuit Court for *Waupaca* County.

In November, 1853, the defendants entered into a written
agreement with the plaintiffs, by which the former leased to
the latter a certain saw-mill for one year, and which contained
the following among other provisions: "The first [defendants]

are to furnish one good saw besides the one now in use in the mill, and when the belts commence to fail, the second [plaintiffs] are to furnish leather, and the first are to make them. All other repairs over five dollars the first are to make; all under five the second are to make; and positively all repairs are to be made by either or both parties, as soon as there is an appearance of any thing failing, to avoid a break down, or a heavy repair, or delay, — the head sawyers to be judges of the mill-gearing, and the engineers to be the judges of the engine and boiler. The first [party] to have the privilege of selecting two engineers; the second paying them one dollar per day and board; who are to be the best that can be got for that price. The second are to furnish good competent sawyers for running such a mill, and are to run the mill not to exceed three hundred cuts of the saw per minute, the engineers to be the judges." The complaint sets out the agreement, and alleges that in August, 1854, without fault on the part of plaintiffs, the engine broke down, "and the head engineer did adjudge repairs to be necessary, and that said repairs would cost over five dollars," and that defendants, after being duly notified thereof, refused to make said repairs, whereby said mill became wholly worthless to plaintiffs during the remainder of their term, to their damage, etc. The answer alleged that the break-down of the engine was caused by plaintiffs' negligence and improper management of the machinery.

On the trial, defendants' objection to any evidence being given under the complaint, because it was not alleged that repairs costing over five dollars became necessary, nor that they were adjudged to be necessary by the engineers, was overruled. The plaintiffs offered in evidence, among other things, the depositions of one Patterson and one Duffield, and defendants objected thereto, on the ground that there was no evidence that the witness resided more than thirty miles from the place of trial, nor any other reason shown why the deposition was

taken; but the objection was overruled. It appeared from the depositions that Patterson resided in Necedah, in Juneau county, and Duffield in Leola township, Adams county, in this state. The testimony of the plaintiff *Hinckley*, and of one Seeley, as given upon a former trial, and printed in the case made upon the appeal to this court, was offered in evidence under a stipulation which provided that the same might be "read in evidence upon the trial of this cause," etc. The defendants objected, on the ground that there had been one trial of the cause since that stipulation was made, and a judgment rendered, which had been reversed by the supreme court, and a new trial ordered; and that the stipulation did not authorize the reading of the testimony on this trial; but the objection was overruled.

The court instructed the jury, *inter alia*, that if the plaintiffs ran the saw at a rate exceeding three hundred cuts per minute, this was no defense unless it caused the injury complained of; that "this was not a dependent agreement, nor a condition precedent," and it was not necessary for plaintiffs to prove a compliance with it to entitle them to recover. The court refused to instruct the jury, as requested by the defendants, that plaintiffs could not recover without proving that repairs which would cost over five dollars were necessary, and that the *two* engineers selected according to the contract so adjudged; or that the performance by plaintiffs of all the agreements on their part in said contract was a condition precedent, and must be shown before they could recover. Verdict and judgment for the plaintiffs; and defendants appealed.

*Wheeler & Kimball*, for appellants:

1. When the contract provides that the engineers shall be the judges as to the cost of repairs, and also provides for *two* engineers, and there were two in fact, defendants are not bound by the decision of one engineer. 13 Wend. 95, 98; 3 Denio, 588; 3 Comst. 396. The complaint avers that "the head engi-

neer did adjudge repairs to be necessary, and that said repairs would cost," etc.; but this is no allegation that such repairs were in fact necessary.    Hence, the objection to receiving any evidence under the complaint should have been sustained.

2. The performance of plaintiffs' agreements was a condition precedent, and should have been proved. 5 Wis. 129; 20 id. 466; 1 Seld. 247; 1 Kern. 30; 21 Pick. 439.

*W. C. & H. C. Webb* (with *S. U. Pinney* of counsel), *contra*, to the point that defendants' covenant was independent, cited the note of Sergt. Williams to the case of *Pordage v. Cole*, 1 Saund. 320 (*b*); *Boone v. Eyre*, 1 H. Black. 273, note *a*; 2 Parsons on Con. 36–41.

DIXON, C. J.    This cause is now here for the third time, upon questions distinct from any heretofore decided.·  See 13 Wis. 31; 17 Wis. 413.

The first exception is to the order of the court overruling the defendants' objection to any evidence being received under the complaint, because it is not alleged that repairs costing over five dollars became necessary, nor were such repairs adjudged necessary by the engineers.    The first ground of objection does not exist.    It is alleged in the complaint, that repairs which would cost over five dollars became necessary.    The other ground of objection is equally untenable.    A copy of the lease is set out in the complaint, from which it does not appear that repairs costing above the sum of five dollars were to be adjudged necessary by the engineers before the defendants should be required to make them.    The agreement was, "and positively all repairs are to be made by either or both parties, as soon as there is an appearance of any thing failing, to avoid a break down, or a heavy repair or delay,— the head sawyers to be judges of the mill gearing, and the engineers to be judges of the engine and boiler."    The object of this is apparent.    It was, that, when *there was an appearance of any thing failing,*

the sawyers or engineers should be the judges, in order that the parties bound to make the repairs could make them so as to *avoid a break down, heavy repairs, or delay.* But the complaint alleges that the machinery actually broke down, so that it could not be run or used. That was not a case to be judged of. by the engineers, within the contemplation of the parties to the agreement. It required no engineering skill to determine it, but was a fact to be inquired into like any other, both as to the nature of the injury and the sum required to repair it.

The objection to the reading of the depositions of the witnesses Patterson and Duffield is not sustained by the record. The notices and certificates required by law to be annexed to them are not embraced in the bill, nor is it stated that there were no such notices or certificates. The presumption is that the depositions were regularly taken and correctly admitted by the court below, until the contrary is shown by the party objecting. It is incumbent on the party assigning error to establish it by the record. Besides, the objection was, that it did not appear that the witnesses resided more than thirty miles from the place of trial. The place of residence of each witness is stated in his deposition; and the court, taking notice of the geographical divisions of the state, must know that they resided more than that distance from the place of trial.

And we think that the testimony of the plaintiff *Hinckley* and of the witness Seeley, taken on a former trial, was clearly admissible under the stipulation signed by the attorneys in the action. The stipulation is general, that the testimony "may be read in evidence on the trial of this cause," and will not sustain the construction that it was to be read only on the first trial which was had after the stipulation was made.

And the remaining question, as to whether the stipulations of the lease were dependent or independent, we are also of opinion was correctly decided by the court below. The promise "to run the mill not to exceed three hundred cuts of the saw

per minute," goes only to *part* of the consideration on both sides, and a breach may be paid for in damages. The rule in such cases is, that the defendant has his remedy on the promise, and shall not plead it as a condition precedent. It is considered as an independent and not a dependent promise, and the plaintiff may sue without averring performance in the declaration. The court instructed the jury that running at a rate exceeding three hundred cuts per minute was no defense, unless it caused the breakage in question. This instruction was sufficiently favorable to the defendants. But there is another reason why I think the defendants cannot defeat the action of the plaintiffs on this ground. The lease provides that the engineers were to be the judges of the rate of speed at which the mill was run. It also provides that the defendants were to have the privilege of selecting the engineers; and it seems that they did select them. At all events it was their right to do so. Now, with engineers of their own selection and under their own control, who were to judge of the rate of speed and whether it exceeded that prescribed by the contract, it seems to me that the defendants cannot complain that the mill was run too fast, unless they show that the plaintiffs were in some way responsible for it, which they have not attempted to do. If the running of the machinery was entirely controlled by the engineers, as it appears to have been, then the excessive rate was not the fault of the plaintiffs, and the defendants have no cause of complaint against them.

It follows from these views, that there was no error in the proceedings, and that the judgment must be affirmed.

*By the Court.* — Judgment affirmed.